IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MELVIN LOWE, | ) |
|     Plaintiff, | ) |
| -vs- | )    Case No. 2:05-cv-495-WKW |
| MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*, | ) |
|     Defendants. | ) |

## MEMORANDUM BRIEF IN REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Montgomery County Board of Education, the individual Board members and the Superintendent, Defendants in the above-styled cause, in response to Plaintiff's Opposition Motion for Summary Judgment.

### I. CAUSES OF ACTION

Defendants seek to clarify the relevant claims as follows:

#### A. CLAIMS ABANDONED

Although Lowe attempted to state a First Amendment association claim in regard to his mother, and Defendants addressed same in its Memorandum Brief In Support of the Motion For Summary Judgment ("Defendants' Brief"), no such claim has been addressed in Plaintiff's Memorandum Brief in Opposition of Summary Judgment ("Plaintiff's Brief") and as such any First Amendment association claim has been waived and/or abandoned by Lowe. As such, said claim is due to be dismissed.

Lowe addresses a claim of retaliation only as it relates to the jobs in the summer of 2005 thereby abandoning any claim of retaliation as it relates to the EEOC charge his mother allegedly filed in 1985. (Plaintiff's Brief pp.39-44, 57-58). Nowhere in Plaintiff's Brief is a retaliation claim regarding Lowe's mother's EEOC charge discussed. As such, said claim is due to be dismissed.

On pages 44-49 of Plaintiff's Brief, Lowe discusses "§1983" as if it were a separate cause of action. However, §1983 does not constitute a separate cause of action against a governmental entity, rather creates a vehicle for seeking redress for a particular constitutional violation.

Although Lowe initially alleged race discrimination, Lowe addresses the disparate treatment claim as it relates only to sex discrimination, therefore abandoning any claim that he was subjected to race discrimination.[1] Accordingly, any claim for race discrimination is due to be dismissed as a matter of law.

### B.    CLAIMS NOW ARGUED BUT NOT PROPERLY PLED

As is more fully addressed in Defendants' Brief, there were numerous jobs that Lowe made reference to during his deposition that were not part of his EEOC charge, his Complaint or his Amended Complaint. Any argument that discovery regarding these jobs or Defendants' presentation of evidence regarding these positions allows Lowe to now seek recovery regarding same, is misplaced. Certainly Defendants had to, in good faith, respond to discovery pursuant to the guidelines of the *Federal Rules of Civil Procedure*. Further, Defendants plainly maintain their position throughout Defendants' Brief that any claims not stated in the EEOC Charge and/or not pled in the Complaint were not properly before this Court for consideration. However, because Lowe referenced various jobs, Defendants presented evidence regarding these positions in an abundance of caution and in case any such evidence was presented as circumstantial evidence of discrimination for the claims properly asserted. Lowe could not say who was awarded these positions, let alone their race or sex at the time he was deposed. It is undisputed that Lowe did not properly assert causes of action regarding the various positions he applied for during the summer of 2004 with the exception of the positions specifically complained about in his lawsuit. As such, to the extent Lowe attempts to benefit from Defendants' good faith participation in discovery and thoroughness in briefing, said reliance must fail. Moreover, Lowe fails to address or explain the

---

[1] Plaintiff's Brief vaguely references the placement of black males on p.55 in the Equal Protection discussion, but there is no substantive discussion regarding direct or circumstantial evidence of race discrimination. See *Resolution Trust Corp.*, 43 F.3d at 599 (holding that the onus is upon the parties to formulate arguments).

fact that he does not actually argue that he should have been awarded the positions in question, but asserted that he should have been granted an opportunity to interview. It is worth noting that beyond the good faith actions of Defendants, Lowe offers no factual or legal basis for the Court to discern that a claim for *every* job he applied for in the summer of 2004 is a properly maintained claim before the Court. The law is well-settled that each separate discrete act of alleged discrimination must be stated in the EEOC Charge and then stated in a Complaint. Such was not done here.

## II.   CLARIFICATION OF FACTS

The following facts or lack of facts are worth noting:

### A.   RESPONSE TO LOWE'S VERSION OF THE FACTS

#### 1.   Prior Problems

At page 3 footnote 2, Lowe argues that Defendants have emphasized his prior problems with the school system to cloud the issues. To the contrary, said information is provided to explain prior non-renewals, the relevance of Dr. Carter giving him a second chance of employment and as a possibility, among many, that if anybody was ever discouraged from hiring him (assuming it happened), it could just as easily be based on the prior problems as opposed to impermissible ones.[2] Also, for clarification, Lowe states that Barker conceded that he could not find any evidence of wrongdoing when Lowe was accused of improperly paddling a student at Southlawn Middle School. Such statement is incorrect based on Barker's testimony. (Barker Depo. p.133 at line 20-p. 131 at line 8).

#### 2.   Evidence Regarding Lowe's Mother

Lowe offers evidence from his mother that Dr. Carter, when rehiring Lowe, said "he would only be a teacher in this school system." (Plaintiff's Brief p.5). However, even if such statement was made, it is irrelevant to any cause of action before this Court because the comment in no way

---

[2]This fact is especially true since there is no evidence to indicate that any person did not hire Lowe because of race, sex or retaliation.

relates to Lowe's race, sex, or the filing of any lawsuit. The comment was not made relevant to any position properly before the Court. The remaining information presented on page 5 regarding comments about Lowe is further irrelevant because Lowe has abandoned any retaliation claim as it relates to his mother's lawsuit and has abandoned any First Amendment association claim regarding his mother.

### 3.     Summer of 2003

Plaintiff's Brief at pages 5-6 summarizes the hiring for positions which Lowe claims he applied for in the summer of 2003. However, by Lowe's own admission in his brief, any such claims are time barred and not preserved in this lawsuit. Lowe fails to present a *prima facie* case regarding these positions. Furthermore, it is undisputed that Lowe was awarded a position with the school system in the fall of 2003 and therefore did not suffer an adverse employment action at that time in regard to any of those positions. To that end, the general information provided about these positions is not related to the specific claims made in this case or the circumstances surrounding same and therefore does not constitute circumstantial evidence of discrimination. Barker stated that he is familiar with all positions referenced by Lowe, and the most qualified person was hired for the jobs in question.

### 4.     2003 Teacher-Tutor Position

Lowe states that he returned to Montgomery Public Schools ("MPS") in the fall of 2003 to a teacher-tutor position but purports that he thought he was being hired as a reading coach. (Plaintiff's Brief pp.6-7). However, it should be clarified that Lowe never testified that he thought the position was a ten-month contract and the reference to a reading coach job as an administrative position is not based on any evidence in the record. Barker testified that the teaching position that Lowe was to fill was never a reading coach position and therefore any reference to a change in the position is misplaced. Lowe does not dispute Barker's testimony about reading coach positions. (Barker Depo. p.68 at line 11-p.69 at line 11; p.104 at line 8-p.105 at line 18; p.111 at line 9-p.113 at line 19). Lowe admits he wanted to teach in Montgomery because that is where he lived. There is no evidence that even if there had been a reading coach position at Daisy Lawrence, that said

position would have been a ten-month position. To that end, any argument by Lowe that performed the responsibilities of a reading coach is irrelevant because it is undisputed that the two positions are paid on an identical scale. Lowe does not address Owens' testimony that Lowe performed the job of a teacher-tutor. (Defendant's Brief p.12 footnote 16).

### 5. Pam Cloud

On page 8 of Plaintiff's Brief the EEOC Charge of Pam Cloud is discussed. This EEOC Charge relates to race. It is completely irrelevant to this Court's analysis because Lowe has abandoned or waived any race claim by failing to present argument of same in Plaintiff's Brief. Moreover, the allegations of one individual against the school system certainly does not constitute proof or even evidence of said allegations.[3]

### 6. Abrams' Hiring of Administrative Assistant in 2004

On page 9 of Plaintiff's Brief it is stated that "according to Abrams, he was told he had to hire a female" for the administrative assistant position at McKee. Actually, Lowe claimed that Abrams said that Barker told him he had to hire a female. Barker denies ever having made that statement and Abrams denies that Barker ever said that to him or that he told Lowe same. As such, this is inadmissible double hearsay that is not probative and cannot be used to rebut summary judgment as discussed more fully herein.

### 7. Unpled Jobs in 2004

Lowe lists various jobs to which he allegedly applied but was not granted in 2004. (Plaintiff's Brief p.9). However, as stated previously, there was not a cause of action brought in regard to these positions in Lowe's Complaint. Furthermore, Lowe presents no evidence that he was qualified for various positions and there is absolutely no evidence of pretext presented regarding the legitimate, non-discriminatory reason — more qualified — proffered for the individuals hired. To the extent Lowe presents summary statistical evidence about the number of women who were hired for the positions, such is not probative because there is no evidence regarding the number of men

---

[3] Pam Cloud's case is still pending and there has been no finding of wrongdoing on behalf of MPS. The comments she alleges have been denied by both individuals.

who applied for the positions awarded or more importantly, their comparative qualifications to the successful applicants. See *Eastland v. Tenn Valley Auth.,* 704 F.3d 613 (1983).

### 8. T.S. Morris

Lowe makes several statements regarding the Administrative Assistant position at T.S. Morris. Lowe cannot compare the fact that he is not certified as a special education teacher (Lee and McKee 2005) to Denita Easterling receiving an administrative assistant position and interviewing for same while she allegedly awaited certification documentation. First, the principals in question were not the same. Second, the record is void of any evidence that Barker knew of any individual who went through the interview process for any position with MPS without being certified. It is undisputed that Easterling was certified at the time she received the job in the fall of 2004. Moreover, Lowe complained in his deposition about Easterling being placed in a summer position and there is no evidence to rebut Johnson's affidavit testimony in this regard.

### 9. EEOC Charge

On page 11 of Plaintiff's Brief there is an attempt to state that Lowe's correspondence with the EEOC constituted a charge. It is undisputed that his official Charge of Discrimination was filed November 15, 2004.

### 10. Documents Sent to Owens

On page 11 of Plaintiff's Brief there is a discussion of documents being sent to Owens regarding Lowe. However, it is undisputed that Lowe was rehired for the 2004/2005 school year and did not experience an adverse employment action. Moreover, there is absolutely no evidence of how Owens received the information. Even assuming it came out of the personnel office, there is no evidence that it came from a relevant decision-maker in this case and is therefore irrelevant to the Court's analysis in any regard.

### 11. Administrative Assistant at Southlawn 2004

On page 12 of Plaintiff's Brief, Lowe argues that procedure was breached when Pam Cloud was hired at Southlawn Middle School as an Administrative Assistant and that Tina Minot told him that she had to hire Pam Cloud because of a lawsuit. First, the alleged breach of procedure relates

to Barker stating that he requests the principals supply three names for selection. There is no evidence that the principals always follow these instructions or no evidence that to the contrary of Barker's request, sometimes less than three applicants are submitted or top choices are indicated. Starks confirmed that such procedure was a requirement of the Board and she understood same. There is no evidence that the breach of this procedure, assuming it is considered so, had anything to do with Lowe's race, sex or his lawsuit. To the contrary, undisputed evidence through Minott's affidavit is that after the committee interviews, Pam Cloud was their top choice for the job. Even for the sake of argument, if Pam Cloud was put in the position because of a lawsuit, same is not an impermissible reason for hire. The evidence regarding Minott's hiring of Pam Cloud therefore does not constitute pretext because there is no information that the legitimate, non-discriminatory reason for hiring Pam Cloud is false.

### 12.     Professional Development

On page 12 of Plaintiff's Brief it is stated Lowe was wrongfully denied professional development. However, there is no evidence of pretext regarding a legitimate, non-discriminatory reason offered by Barker for the denial of the professional request for leave. Others confirmed that their professional development requests had been denied. Moreover, a review of Looney's e-mail (Lowe's Exhibit M) does not state that he was attempting to get approval of the leave request for Lowe. In fact, Barker testified that Looney never approved Lowe to attend the conference. The e-mail supplied by Looney does not indicate otherwise. The e-mail simply states that he was attempting to help Lowe which could be many solutions shy of Lowe getting the request he sought.

On pages 12-13 of Plaintiff's Brief it stated that Hicks typically approved and denied requests for professional leave but the evidence actually indicates that Barker was involved in that process at times. Again, there is no evidence of pretext presented to rebut Barker's explanation that the leave was not in line with Lowe's job duties. More importantly, the denial for professional leave request does not constitute an adverse employment action. Lowe does not argue otherwise. There is no evidence that the leave request denial was in anyway related to Lowe's EEOC Charge or lawsuit.

### 13. Internal Complaints

Any insinuation that Purcell ignored internal complaints is unfounded. She simply testified that such did not constitute complaints that warranted action based on the procedures required. Plaintiff's Brief ignores Barker's testimony regarding how such complaints are handled. It is misleading to make the argument that the complaints were not investigated simply because Purcell did not conduct an investigation personally. It is also Purcell's right to believe Barker's account of what was occurring as opposed to Lowe. To that end, Lowe's argument ignores Owens' denial of the negative statements in question.[4] It is further important to note that there is no evidence that Purcell has entertained complaints of any individuals that were not filed in the form of an official grievance. Therefore, there is no comparison to be made that Lowe was mistreated in this regard. It is critical to note that Lowe offers no evidence, other than his belief, that any evidence of discrimination or retaliation would have been uncovered against Barker through investigation. Defendants do not maintain that Lowe fails to state any claim for failure to make an internal complaint.

### 14. Summer 2005

Lowe's reference to the number of jobs that were available in the summer of 2005 is disingenuous in that there is no evidence as to what jobs Lowe allegedly applied for other than the four he states in his Complaint. He presents no evidence of his qualifications regarding these jobs or his comparative qualifications for these jobs in relation to the successful applicant. There is no evidence of the number of applicants. The number of jobs filled is irrelevant.

### 15. Special Education Jobs in 2005

For clarification, it is undisputed that Lowe did not have the requisite courses to be certified in special education. If given more time he would not have received regular certification prior to the start of the school year in the fall of 2005 to be a special education teacher. Furthermore,

---

[4] On page 14 of Plaintiff's Brief there is inadmissible double hearsay presented to allege that Owens told Lowe various comments that Barker allegedly made about Lowe and his lawsuit. However, Barker adamantly denied ever having any such conversation with Owens and Owens denied any such conversation or making any such statements to Lowe. These alleged comments were not in relation to the placement of any particular job and is inadmissible double hearsay. Lowe does not argue otherwise.

Abrams nor Sikes testified that they sought to hire him for the position but rather spoke to him about the position and checked on his certification so they could make a decision about hire. (For that matter, Starks also did not tell Lowe he was being recommended even though such is argued in Plaintiff's Brief). It is also critical to note that there is absolutely no evidence submitted by Lowe that the individuals selected for the special education positions by Sikes and Abrams were not more qualified. It is undisputed that the individuals were certified to teach the position.

**16.    Reading Committee**

Lowe's arguments about the reading coach position are inconsistent with the evidence. First, any argument that Lowe did not actually participate in a reading committee interview is contrary to any evidence presented in this case, most importantly, that of Lowe. (See Lowe Depo. p.366 at line 18-p.370 at line 23). Lowe now files an affidavit saying that *after* he and Owens spoke about the reading coach position (and he was initially recommended), he was informed by Barker that he needed to be interviewed by the reading committee (Lowe's Exhibit B at ¶6). Lowe can certainly not create a question of fact by presenting conflicting information. Regardless, any insinuation that the reading committee was *fabricated* as a defense in this case is disingenuous based on the undisputed evidence as Lowe presents it. Lowe's argument that he never interviewed with a reading committee is simply untrue. (Plaintiff's Brief p.42). To that end, although pointless in light of Lowe's own testimony, it is prudent to point out that it is misleading to say that the four principals deposed did not know about the reading committee. First, only Abrams and Owens denied knowledge. (Plaintiff's Brief p.18). Moreover, it was Owens' first time to hire a reading coach and there is no evidence that Abrams has ever hired a reading coach.[5]

Lowe further attempts to attack the legitimate reasons for his non-hiring by alleging that he did not have to go through such a committee for a summer camp position. First, a summer camp reading position is not comparable to a reading coach for the academic school year. Second, Looney and Teresa Nichols (those who allegedly hired Lowe for the job) were employees of the

---

[5] On page 42 of Plaintiff's Brief it is stated that none of the four deposed principals knew about the reading selection committee. Such a statement is not supported by the evidence and is otherwise irrelevant.

Office of Curriculum and Instruction, the exact department who had the reading coach interviews for individuals hired at the various schools.[6] (Lowe's Exhibit B at ¶5).

Lowe also attempts to characterize Barker's and Purcell's testimony as contradictory in regard to the reading coach position. Again, such is misleading. Purcell said that protocol had not been followed when Owens recommended Lowe for the reading coach position because he did not follow procedure for the hiring. Said statement is true because he was not highly recommended by the committee. Even if her recollection was that he was not interviewed, such is irrelevant when the point she was making is that Lowe was not a highly recommended candidate. It is undisputed that he was not. Lowe attempts to use his affidavit to cloud the issue, but it actually serves to discredit any notion that he was not interviewed *at some point*. He certainly does not deny same. Regardless of how the specific facts are twisted, it remains undisputed that Lowe was not a highly recommended candidate from the reading committee and was therefore not considered a viable candidate for the job, even if Owens recommended him a second time. Lowe cannot dispute the fact that he was not highly recommended by the reading committee because he performed poorly in the interview. (Lowe Depo. p.366 at line 18-p.370 at line 23). Both Purcell's and Barker's, regardless if made differently, are true statements nonetheless. To that end, even if there are inconsequential discrepancies in how the explanation is presented, such is not evidence of a genuine material fact as to whether pretext exist based on the undisputed facts of the case.

It is further important to note that Lowe cannot dispute that Purcell told all administrative staff that they must hire reading coaches from the highly recommended selection of the reading committee. (Lowe Depo. p.369 at lines 14-21). Lowe argues that Purcell had in the past followed the hiring recommendation of the principals.[7] For several reasons this comparison is not appropriate. First, there is no evidence that any other Principal in the school system attempted to recommend an individual for a reading coach position who was not highly recommended by the com-

---

[6]On page 18 of Plaintiff's Brief it is stated that Lowe did not go through a hiring committee for his years as "reading coach" at Daisy Lawrence. Again, he was a teacher/tutor at Daisy Lawrence.

[7]Purcell was new. It is undisputed that Carter routinely did not follow the recommendations.

mittee. In fact, no such circumstance exist. Second, Lowe presents no evidence to dispute the fact that Purcell and Barker had concern about Owens coming from an alternative background school as opposed to a traditionally structured educational background and concern that Patterson Elementary had not been achieving adequate yearly progress, an "at risk" school. Lowe provides no proper comparative evidence to demonstrate pretext in this regard. Third, the principals who said their recommendations were typically followed all admitted that their recommendation could easily be trumped by human resources. Fourth, the typical hiring of teachers is NOT the same as hiring the reading coaches since the new procedure established in 2003. Again, there is no evidence that anyone other than Owens breached this procedure.

Failing to otherwise create evidence of pretext, Lowe also makes reference to the fact that Barker said notes were taken during the reading coach interview process but Defendants have never produced said documents. There is no evidence that these records should have been maintained or the failure to be able to produce them now is indication of pretext in light of the fact that again, contrary to the argument in Plaintiff's Brief, Lowe was interviewed by the reading committee and the undisputed evidence is that he was not highly recommended out of the committee. The "lack of notes" argument is presented in Plaintiff's Brief to argue that no such committee exist. The words "reading committee" are in quotations as if it is a made up term. Again, it is imperative to take note of Lowe's specific acknowledgment and participation in this process. The fact that he disagrees that he had a poor interview is irrelevant. Interestingly, Lowe fails to address the undisputed evidence that race, sex or his prior lawsuits were not an issue during this process. (Lowe Depo. p.366 at line 18-p.370 at line 23).

Regardless, it remains undisputed that the individual hired for the reading coach position at Patterson Elementary in 2005 was significantly more qualified than Lowe. She was highly recommended out of the reading committee and was a veteran teacher with the Board who had taught reading for several years. (Owens Depo. p.93 at lines 1-22; Barker Depo. p.41 at line 10-p.42 at line 21).

### B. ADDITIONAL FACTS IGNORED BY LOWE

Lowe ignores the undisputed facts regarding his brother's success with MPS, his being allowed to return after three years of trouble involving three different schools and three different principals, and the absence of any principal to recommend him for any of the jobs in question *except* for the reading coach job which is addressed above.

## III. CONCLUSIONS OF LAW

### A. DISPARATE DISCRIMINATION - TITLE VII

As stated above, Lowe makes no argument that he was subjected to racial discrimination. He has abandoned any such claim. Rather, Lowe attempts to create a question of fact regarding certain jobs that he was not awarded because he is male.

#### 1. Circumstantial Evidence

To the extent Lowe attempts to create a question of fact regarding the "statistics" he provides, this reliance is misplaced. First, there is no evidence about the number of male applicants as opposed to women. Second, there is no comparative qualification evidence regarding male applicants (including Lowe) and the successful female applicants. Thus, the alleged statistical information is flawed. See *Eastland,* supra. Third, Lowe repeatedly argues that Defendants are attempting to balance the schools by sex. Based on Lowe's version of the statistics, such can certainly not be the case.

Lowe otherwise fails to present evidence of pretext regarding the jobs in question. He cannot rebut the legitimate reason of more qualified, regarding any of the positions, as is more fully discussed herein and in Defendants' Brief which is adopted and incorporated herein. The law is plain that Lowe's evidence of pretext must reveal "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could fine them unworthy of credence."*Vessels v. Atlanta Independent School System*, 408 F.3d 763, 771 (11th Cir. 2005) (other citations omitted). Lowe simply does not meet this burden.

**2.     Direct Evidence**

Lowe's claim about Abrams' alleged statement does not constitute direct evidence of sex discrimination. Said claim is double hearsay and inadmissible, impermissible evidence to rebut summary judgment. Lowe's argument regarding the hearsay exception ignores the <u>double hearsay</u> problem and the fact that Abrams did not have the authority to speak for the Board on the matter at hand. The statements are otherwise inadmissible pursuant to the precedent of *Zaken v. Air Products and Chemicals Inc.,* 129 F.3d 1453 (11th Cir. 1997) and the other cases cited therein.

**3.     Other Jobs**

As it relates to the jobs not properly pled in this lawsuit, Lowe actually states that he could have at least been interviewed for the various jobs, not that he should have been awarded the jobs. However, the testimony presented in Defendants' Brief is that the principals chose who to interview from applicant pools. There is no evidence that the relevant decision-makers here did anything to block anyone from interviewing Lowe and if he was not selected for an interview, there is absolutely no evidence that it was based on his race, sex or his lawsuit. Lowe points out that the Board does not contest his qualifications for these positions. Defendants never conceded Lowe was qualified for the positions and maintain that said burden rests with Lowe, which he has not met. Defendants simply argued that even if he was qualified, the claims were not preserved and he presents no evidence of pretext regarding the Board's legitimate non-discriminatory reason of hiring the other individuals - more qualified.[8] Lowe's assertion that the Board only claims the successful applicants were "qualified" is simply untrue. Barker's affidavit addressed these positions and plainly purports that the successful applicant was the most qualified for the job. <u>See</u> Barker's Affidavit at ¶7 and Defendant's Brief at pp.50, 68). The employer's burden at this stage in the burden-shifting analysis pursuant to *McDonnell Douglas* is "exceedingly light." *Perryman v. Johnson Products Co.,* 698 F.3d 1138, 1142 (11th Cir. 1983). Certainly, the law has long recognized "more qualified" as a

---

[8]Lowe's failure to conduct discovery or explore the comparative qualifications of the successful applicant is proof that he never perceived these positions as relevant claims in this case.

legitimate, non-discriminatory reason for an employment decision. See *Williams v. Mead Coated Bd., Inc.*, 836 F.Supp. 1552, 1571-72 (M.D. Ala. 1993), *aff'd* 41 F.3d 668 (11th Cir. 1994)(citing *Olafson v. Dade Co. School Bd.,* 651 F.2d 393, 395 (5th Cir. 1981). Accordingly, even if Lowe could maintain a cause of action regarding these jobs not pled in his Complaint, he has failed to present sufficient evidence to overcome summary judgment. He does not attempt to do so.

As it relates to all claims of any nature, Lowe fails to ultimately present evidence of intentional discrimination. Any discrimination claim must fail.

### B.    RETALIATION

Only the four jobs of 2005 are at issue here. Defendants adopt the factual discussion herein regarding same and assert that under the applicable standard, no evidence presented by Lowe constitutes a causal connection and/or pretext.

### C.    FOURTEENTH AMENDMENT

Lowe's argument for discrimination pursuant to the Fourteenth Amendment fails for the same reasons stated regarding the Title VII claims. It is worth noting that although there is one reference to race in this portion of Plaintiff's Brief, there is absolutely no evidence presented of race discrimination. The argument presented regards only sex discrimination. Moreover, Lowe cannot point to an official policy or custom of the Board authorizing sex discrimination or retaliation. Lowe makes nothing more than conclusory allegations about practices of the Board and provides improper statistics regarding the number of females hired. Such does not establish a policy or practice under pertinent case authority. See *Deprew v. City of St. Mary's,* 787 F.2d 1496, 1499 (11th Cir. 1986). Lowe attempts to circumvent this argument by alleging that Barker (or even Purcell) are the bad actors and can set policy for the Board. There is absolutely no legal or factual precedent to support such an argument. Barker's nor Purcell's actions can support Board liability because neither are the "final policy-maker" concerning the subject matter. Barker's and Purcell's decisions were "subject to meaningful administrative review." *Quinn v. Monroe County*, 330 F.3d 1320, 1324 (11th Cir. 2003) (internal quotes omitted). Because there is not evidence that the

Board did not approve the hiring or investigative policies in question, Barker's and Purcell's alleged deviation from same cannot represent Board policy. *Thomas, ex rel. Thomas v. Robert,* 261 F.3d 1160, 1173 (11th 2001) (holding that even absent meaningful review of a subordinate's decision, a decision "contrary to the [entity's] official written policy" represents a departure from policy, not the creation of policy) (cert granted and remand opinion on other grounds 323 F.3d 950). As such, any argument that failure to investigate by Purcell or Barker creates §1983 liability for the Board is misplaced.

### D.    FIRST AMENDMENT

Lowe abandons any association First Amendment claim and argues a First Amendment retaliation claim based on his EEOC Charge and lawsuit. The case law cited by Lowe is not instructive to the issue at hand. Lowe makes no argument to overcome his failure to establish any statement as a matter of public concern. Defendants adopt and incorporate herein Defendants' Brief on said issue. The §1983 discussion regarding whether Barker or Purcell can bind the Board for purposes of §1983 liability is also adopted and incorporated herein. Otherwise, for the reasons stated herein, any retaliation claim fails due to lack of the necessary *but for* evidence.

### E.    STATE LAW CLAIM

Lowe's claim cannot be maintained. No policy is even cited to support such a claim. Regardless, Lowe's salary was the same as a reading coach. His contract was for teacher-tutor. He performed the job of a teacher-tutor. There was no breach of policy. Summary judgment is due to be granted on this claim.

Respectfully Submitted this the 12th day of May 2006.

       MONTGOMERY COUNTY BOARD OF
       EDUCATION, VICKIE JERNIGAN, MARK
       LABRANCHE, TOMMIE MILLER, MARY
       BRIERS, DAVE BORDEN, HENRY A.
       SPEARS, BEVERLY ROSS, and
       DR. CARLINDA PURCELL, Defendants,


By: /S/ James R. Seale
  James R. Seale (3617-E-68J)
  Elizabeth Brannen Carter (3272-C-38-E)
  Jayne Harrell Williams (6544-Y-85H)
  HILL, HILL, CARTER,
   FRANCO, COLE & BLACK, P.C.
  Post Office Box 116
  Montgomery, Alabama 36101-0116
  (334) 834-7600
  (334) 263-5969 - fax
  E-mail: jrs@hillhillcarter.com
  E-mail: ecarter@hillhillcarter.com
  E-mail: jhwilliams@hillhillcarter.com
  **Counsel for Defendants**
  wwm/6630.0157/f:Brief-Reply.wpd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing *Memorandum Reply Brief in Response to Plaintiff's Response to Defendant's Motion for Summary Judgment On Behalf of Defendants Montgomery County Board of Education, Vickie Jernigan, Mark Labranche, Tommie Miller, Mary Briers, Dave Borden, Henry A. Spears, Beverly Ross, and Dr. Carlinda Purcell* with the Clerk of the Court for the United States District Court, for the Middle District of Alabama, using the CM/ECF system which will send notification of such filing to: William F. Patty, Esquire (bpatty@beersanderson.com) this the 12th day of May, 2006.

          /S/ James R. Seale